Filed 6/11/15  P. v. Torres CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062040 |
| v. | (Super.Ct.No. SWF1208331) |
| RAUL TORRES, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Edward D. Webster, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed as modified.

Raul Torres, Jr., in pro. per.; Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

# I

## STATEMENT OF THE CASE

On December 9, 2013, a first amended information charged defendant and appellant Raul Torres, Jr., with willfully and deliberately attempting to murder a person named Joshua P. (the victim), in violation of Penal Code sections 664 and 187, subdivision (a)[1] (count 1); willfully discharging a firearm at an inhabited dwelling, in violation of section 246 (count 2); and assaulting the victim with a firearm, in violation of section 245, subdivision (a)(2) (count 3). The attempted murder charge included an enhancement allegation that, in committing the offense, defendant personally discharged a firearm within the meaning of section 12022.53, subdivision (c). The assault charge included an allegation that defendant personally used a firearm within the meaning of section 12022.5, subdivision (a).

On December 17, 2013, a jury found defendant guilty of all three charges, and found true the enhancement allegations.

On April 9, 2014, the trial court denied defendant's motion for a new trial. On September 8, 2014, the trial court sentenced defendant to serve a total of 27 years to life in state prison. Specifically, the trial court imposed an indeterminate term of seven years to life for violating sections 664 and 187, subdivision (a). The court then added a consecutive determinate term of 20 years in state prison for the corresponding firearm

---

[1] All statutory references are to the Penal Code unless otherwise specified.

discharge enhancement under section 12022.53, subdivision (c). The trial court stayed the sentences for the remaining charges in accordance with section 654.

Moreover, the trial court ordered defendant to pay a restitution fine of $900, with a fine in the same amount stayed pending a violation of parole, and $644.08 in court fees. Defendant was credited with having served 663 days in custody, plus 87 days under section 2933.1, for a total of 750 days of credit for time served.[2]

On October 7, 2014, defendant filed a notice of appeal. On March 27, 2015, the trial court notified defense counsel that it had ordered that the abstract of judgment be amended as follows: (1) to correct the days credited to defendant under section 2933.1—defendant having been correctly awarded 663 actual days of custody credit shall be credited with 15 percent of that total in the amount of 99 days—for a total of 762 days credit for time served; and (2) to delete the reference in box No. 8 of the abstract of judgment that defendant was sentenced under section 667, subdivisions (b)-(i) or 1170.12 since "he was not sentenced pursuant to those sections."[3]

---

[2] On March 27, 2015, the trial court sent defendant's appellate counsel a letter indicating that it had ordered the abstract of judgment to be amended and corrected to reflect that defendant received 99 days' credit under section 2933.1, for a total of 762 days of credit for time served.

[3] On April 29, 2015, we granted defendant's request to augment the record to include this letter from the trial court to defense counsel and the prosecutor.

## II

## STATEMENT OF FACTS

In December 2012, the victim lived in a house on Eisenhower Drive in Lake Elsinore with his fiancée and his one-year-old son. Sometime during the afternoon of December 15, 2012, defendant stopped by the victim's garage while the victim was doing some drywall repair. The victim had never met defendant before.

Defendant had a bottle of vodka. The victim and defendant started to talk and drink together. They were together in the garage for about an hour. During that time, defendant was drinking vodka and beer; both the victim and defendant became drunk. Defendant told the victim he was from Santa Ana and that he was new to the neighborhood. Defendant was continually drawing on a piece of paper and saying something about "Vatos Locos." Defendant also said something about "sur" and "surenos." The victim, who did not speak Spanish, did not know what defendant was talking about. The victim did not ask defendant if he was in a gang. The victim did not think defendant was threatening him with a gang.

At some point, defendant and the victim began to fight. The victim testified that he probably started the fight but he could not remember what the fight was about. The first blow of the fight occurred when the victim slapped defendant with an open hand. The victim and defendant began "box[ing]" in the driveway. The victim was 5 feet 10 or 11 inches tall and weighed 250 pounds. He was bigger than defendant.

The initial fistfight lasted about a minute or so. The victim was not injured and he did not think that defendant was injured either. At least 20 people in the neighborhood had come out onto the street to watch the fight. The victim believed that he had won. According to the victim, defendant "got kind of busted up and took off walking. He got about halfway down the street, turned back around and came back and wanted more and said, 'who jumped me?'" Defendant accused the victim of jumping him.

In response, the victim asked defendant if he wanted "to go" again. When defendant started to fix his belt, the victim punched defendant in the face. Defendant and the victim started to fight again. During this second brawl, defendant got knocked to the ground and the victim kicked defendant.

Defendant and the victim stopped fighting when the neighbors shouted that they had called the police. Defendant walked up the street; he said he was "going to get his bigger homie and he was going to come back."

After changing out of his bloody shirt, the victim returned to his garage. About 5 or 10 minutes later, a green Honda Civic drove slowly past his house. A "bigger guy" was driving the car; the driver stared at the victim. The victim had never seen that person before. Two neighbors were still out on the street at the time.

About two or three minutes after the green Honda Civic passed, it turned around and came towards the victim's house. Defendant was in the passenger seat. The car went to the stop sign at the end of the victim's street and turned right. The victim then saw

5

defendant come walking up the street towards his house. Defendant was wearing a hoodie and gloves.

Defendant stopped at the base of the victim's driveway next to the victim's truck. Defendant motioned for the victim to come out to the driveway. The victim turned around and started walking back into his house. Defendant suddenly ducked behind the victim's truck and said, "fuck you, bitch," and then pointed a gun and started to shoot. The victim quickly went into his house and shut the door. He then heard five or six gunshots. Bullets struck the doorway, less than a foot away from the victim. The victim ducked behind a dresser as more bullets entered the house. Bullets struck the dresser next to the victim, and he later found a bullet in a dresser drawer. Bullets also struck the bathroom door next to the victim's son's bedroom.

The victim's fiancée and son had left the house during the fistfight; they were not home at the time of the shooting.

The victim waited inside his house until the shooting stopped. He then heard people running along the side of his house calling out his name. The victim went out his back door and saw defendant running towards the stop sign where the green Honda Civic had turned the corner. At that moment, the police arrived on the street. Neighbors were also outside on the street.

The police confronted defendant near the stop sign. He ran away from the police and past the victim's house. Defendant was still holding a gun as he ran by. While the police chased defendant, neighbors warned them that defendant had a gun.

6

Lake Elsinore Sheriff's Deputy Glenn Warrington was one of the deputies involved in the case. During the pursuit, defendant jumped over fences and ran through people's backyards. Deputy Warrington eventually drove alongside defendant, pointed his gun at him, and ordered him to stop. At that point, defendant appeared to be reaching for his gun. The deputy stopped his car, hopped out, tripped over a curb, and fell. Defendant turned and pointed his gun at the deputy, but defendant also slipped and fell down. As defendant fell, he dropped his gun. Deputies quickly subdued defendant and recovered his black .32-caliber Smith & Wesson revolver. The gun had six recently expended shell casings in its cylinder.

Defendant was wearing a black hoodie and black gloves. The victim identified defendant to the police as the person who had shot at his house.

### III
### ANALYSIS

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 setting forth a statement of the case, a summary of the facts, and potential arguable issues, and requesting this court to undertake a review of the entire record.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. On May 15, 2015, defendant filed a one-page handwritten brief. In his brief, defendant requests that we consider the following issues: (1) that a blood test was not taken to measure his blood-alcohol level; (2) that a doctor was not provided at trial to

proffer evidence "on how alcohol can obstruct your judgment"; and (3) that a witness who provided information on the police report did not testify at trial to be cross-examined by defendant. We note that defendant simply states these issues with no citations to authority or explanation as to how these issues affect his appeal. When a party asserts a point but fails to support it with reasoned argument and citations to authority, the court may deem it to be waived, and pass it without consideration. (*People v. Stanley* (1995) 10 Cal.4th 764, 793; see also *People v. Dougherty* (1982) 138 Cal.App.3d 278, 282-283 [argument of counsel is insufficient; briefs must contain factual underpinning, record references, argument, and/or authority].) Nonetheless, we shall address defendant's arguments.

As to defendant's statement that a blood test was not taken to measure his blood-alcohol level, we note that the jury heard testimony that both the victim and defendant were intoxicated. There was no doubt as to defendant's intoxication. Moreover, a doctor's testimony regarding defendant's alleged impaired judgment was not necessary. It is common knowledge that alcohol can impair judgment. Here, the evidence showed that after defendant and the victim were engaged in a physical fight, defendant left. Instead of staying away, defendant chose to return to the victim's house with a gun and discharge his firearm. Furthermore, regarding the police report, there was no need for the prosecution to call the witness who provided information in the police report during the trial because the witness's statement was not offered into evidence. Instead, the witnesses who testified—the victim, the victim's fiancée and officers—all testified to show that defendant shot directly at the victim and the victim's home. In fact, one bullet

was shot only a foot away from the victim and another bullet hit a dresser that the victim was hiding behind.

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error and find no error.

## IV

## DISPOSITION

The judgment, as modified by the trial court's letter of March 27, 2015, is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER           
J.

We concur:

RAMIREZ             
     P. J.

MILLER             
     J.